James Donald **LIVINGSTON**,
Plaintiff in Error,

v.

**STATE** of Oklahoma, Defendant in Error.

No. A–12652.

Criminal Court of Appeals of Oklahoma.

Feb. 18, 1959.

Wayne Wheeling, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., William N. Mounger, Asst. County Atty., Oklahoma City, for defendant in error.

NIX, Judge.

Plaintiff in error, James Donald Livingston, was charged by information in the District Court of Oklahoma County with the commission of the crime of burglary in the second degree, after former conviction of a felony on December 7, 1957. The case was tried to a jury; defendant

found guilty; punishment left to the discretion of the trial court who assessed the punishment at 10 years in the State Penitentiary.

The case made with petition in error attached was filed in this court on August 5, 1958, and under the rules of the court, brief was due to be filed within thirty days thereafter and on August 15 the plaintiff was granted 60 days time to brief. On October 30, 1958, an order was issued setting cause for oral argument on December 17. On December 17, the plaintiff was granted 15 days additional time to file brief, but to date no brief has been filed.

■ This court has repeatedly held that: "Where the defendant appeals from a judgment of conviction and no briefs are filed and no argument presented, this court will examine the evidence and ascertain if it supports the verdict, and will make an examination of the information, instructions excepted to, and the judgment, and if no material error is apparent, the judgment will be affirmed."

Hulsey v. State, 82 Okl.Cr. 332, 169 P.2d 771.

Accordingly, we have complied with this rule and find no material error.

The charging part of the information reads as follows:

" * * * on the 7th day of December A.D. 1957, in Oklahoma County, State of Oklahoma James Donald Livingston, whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of Burglary in the Second Degree after Former Conviction of a Felony, in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and being, did then and there wilfully, unlawfully, wrongfully, burglariously and feloniously break and enter into a one story brick building known as the El Rancho Bar, located at 410 N. Broadway, in Oklahoma City, * * * by forcible entry through the rear east door by forcing the lock on the door * * * the defendant did take, steal and carry away by fraud and stealth certain articles therein contained at said time and place, to-wit: approximately $11.65 in good and lawful money of the United States of America * * *."

The record discloses that the accused had previously been convicted in Pottawatomie County on May 10, 1955, with the crime of burglary second degree and had been imprisoned in the state penitentiary.

The defendant testified in his own behalf that on the night in question he left the City Hotel where he had been staying and ate supper at the Bouldin Cafe around 8 p. m. The cafe is adjacent to the El Rancho Bar; that he went to the Sports Center on Broadway and watched the TV fights and while at the Sports Center made some bets on the fight and won. The bets were small and most of his winnings were in coin. That his mother had earlier wired him $4 from her home in Seminole and he had cashed this at the Western Union office; that he left the Sports Center around 11:30 or midnight and went to an all night cafe, ate and read the morning paper. He left the cafe and went to his room at the hotel and shortly thereafter was disturbed by the police who had entered his room after obtaining a pass key from the landlady. That on his way from the all night cafe to the hotel he had noticed a man watching him; that he did not recognize the man then nor could he identify him now. He further stated that he had been released from McAlester May 19, 1957, and he was now roughnecking and working on construction work. That when the police officers entered the room a man with them was the same one that defendant noticed watching him earlier.

Witness Breitschwerdt testified that he was the owner of the El Rancho Bar; that he had seen the defendant in the bar on

several occasions; that the back door to his establishment was a garage type door on rollers and was locked with a chain and padlock. That when he arrived at the bar the morning after the alleged crime, one of his employees informed him of a robbery and he noticed the juke box had been broken into but no money taken, and that the shuffle alley coin box had been broken into and the money was taken from that. That the back door, which he had remembered locking the night before had been pushed inward some 18 to 24 inches, and that neither the lock nor the chain was broken.

Witness Crapes stated that he was walking past the front of the El Rancho Bar around 2:00 on the morning of the alleged crime on his way to Bouldin's cafe next door; that he saw a man inside the bar; his attention was attracted by a loud popping and when he looked, he saw the cigarette machine had the front broken out of it and the man inside ducked; the man then sauntered to the back of the bar out of sight; that witness went into the cafe and asked them to call the police; that witness went back outside and followed the man he saw leave the bar and saw him run to the City Hotel and up the steps. That the squad car arrived and witness went with the officers to the hotel and tried to arouse defendant. When they couldn't, they got a pass key from the landlady and unlocked the door. Defendant was in bed and had on a T-shirt and shorts. He had his left hand closed and when he opened it there was about $3 in dimes. Witness testified that because of the bar lights he could easily identify the man whom he saw inside the bar and could identify the way he was dressed. That the officers were admitted to the El Rancho Bar by a lady that was in the cafe who was a former manager of the bar and still had a key to same. The officers found the machines had been broken open. Witness stated he was a traveling salesman with a chemical company out of Kansas City and had stopped by the cafe for coffee after taking his date home.

Lieut. W. A. Williams, Jr. of the Scout Car Division of the Oklahoma City police department stated he had been with the police department 21 years and on December 7, 1957, answered a call at 410 North Broadway at approximately 2:20 a. m.; that he and two other police officers entered the building with a gentleman by the name of Crapes; a cigarette machine had been pried open and the shuffle alley had been pried open and a can opener was found on the floor; that they went to the City Hotel and asked the night manager if a man fitting the description that witness Crapes had given them had just entered the building; Mr. Fisher, the night manager, stated he had but it would be necessary to ask the landlady which room he rented; the landlady gave the officers a pass key and after they had tried repeatedly to arouse defendant, used the key and entered the room. Defendant was lying on the bed awake. He was asked to get out of bed and he did. That when defendant opened his left hand he had a handful of change. A duffel bag was on the floor and witness emptied it and change spilled out all over the floor. The money was in pennies, nickels, dimes, quarters and a couple of half dollars. That he counted the money and there was "eleven dollars and sixty some cents all told."

█ It has been repeatedly held by this court even where there is a sharp conflict in the testimony and different inferences may be drawn therefrom, such situation presents a question of fact for the sole and exclusive determination of the jury.

█ We have carefully examined the record, and have discovered no material errors committed at the trial. The instructions of the court covered the issues of law involved, and were fair to the defendant. The sufficiency of the evidence, under the circumstances, as related, was purely a matter for the jury.

The judgment of the trial court is affirmed.

POWELL, P. J., and BRETT, J., concur.